**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KOUEI SAETURN (A-No. 027-372-545),<br>Petitioner,<br>v.<br>ANDREWS, et al.,<br>Respondents. | Case No. 1:26-cv-06560-JLT-SAB<br><br>ORDER WITHDRAWING REFERENCE TO THE ASSIGNED MAGISTRATE JUDGE; DENYING THE AMENDED PETITION FOR WRIT OF HABEAS CORPUS; GRANTING RESPONDENT'S MOTION TO DISSOLVE; RESCINDING THE COURT'S NO TRANSFER ORDER; AND DIRECTING THE CLERK OF COURT TO CLOSE THE CASE<br><br>(Docs. 6, 7, 9) |

## I. INTRODUCTION

Before the Court is Kouei Saeturn's first amended petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 challenging his ongoing detention. (Doc. 9.) The government filed a response, asserting that Petitioner is subject to mandatory detention under 8 U.S.C. § 1231(a)(6). (Doc. 10 at 1–4.) This matter was initially referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. In the interest of justice and to promote judicial efficiency, the undersigned hereby withdraws that reference, and for the reasons set forth below, **DENIES** the habeas petition.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2241, the Court has the authority to determine a petition for writ of habeas corpus in which the petitioner asserts he is being held in custody "in violation of the

Constitution or laws or treaties of the United States." "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Petitioner argues he is entitled to immediate release because the Government violated his Fifth Amendment Due Process Clause when Immigration and Customs Enforcement re-detained him. (Doc. 9 at 13–20.) Thus, he properly invokes the Court's habeas jurisdiction.

The Immigration and Nationality Act limits judicial review in many instances. Though 8 U.S.C § 1252(g) precludes this Court from exercising jurisdiction over the executive's decision to "commence proceedings, adjudicate cases, or execute removal orders against any alien," the central issue here is Petitioner's continued detention pending his removal. Thus, this Court has the authority to review Petitioner's habeas petition. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (holding that § 1252(g) precludes judicial review only as to the three areas specifically outlined in the subsection); *Reno v. American–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482 (1999).

## III. FACTUAL & PROCEDURAL BACKGROUND

Petitioner is a citizen of Laos who fled to Thailand at a young age and lived in a Thai refugee camp until around 1985. (Doc. 9 at 6.) At that time, Petitioner came to the United States as a refugee with his wife. (*Id.*) On April 9, 1993, Petitioner was arrested and eventually pled guilty to the importation of opium in violation of 21 U.S.C. § 952(a). (*Id.*; Doc. 10-1 at 2.) Petitioner served a prison sentence in connection with this crime. (Doc. 9 at 6.) Apart from this conviction, Petitioner has no other criminal history. (*Id.*; Doc. 10-1 at 2.) On November 18, 1996, Petitioner was ordered removed to Laos by an Immigration Judge due to his conviction as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii). (Doc. 7-2 at 1; Doc. 9 at 6; *see* Doc. 10-1 at 2, 5); 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."). On April 12, 1997, Petitioner filed an appeal with the Board of Immigration Appeals, and on May 6, 1998, the BIA dismissed his appeal.[1] (*See* Doc.

---

[1] Upon entering Petitioner's A-Number into EOIR's website, the Automated Case Information confirms that the BIA dismissed Petitioner's appeal on May 6, 1998. *See* EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseinformation (last visited September 21, 2026).

10-1 at 2.) On April 21, 2000, the Ninth Circuit Court of Appeals dismissed Petitioner's petition for review. (*Id.*) Petitioner's order of removal is final. 8 U.S.C. § 1231(a)(1)(B).

Soon after he was ordered removed, ICE arrested the Petitioner, but after being unable to remove him to Laos, ICE released the Petitioner on November 27, 1996. (Doc. 9 at 6; Doc. 10-1 at 3.) Although the I-213 indicates that no Order of Release on Supervision (OSUP) document was issued at that time (*see* Doc. 10-1 at 3), it appears that Petitioner was eventually placed on OSUP, as he indicates that he reported to the ICE office for years and internal ICE records indicate he is on OSUP. (Doc. 9 at 6; *see also* Doc. 10 at 2.) According to Petitioner, he reported to the ICE office over the years without fail, and for decades since his release, proved himself to be a beloved community member and devoted father. (Doc. 9 at 6.)

On July 28, 2026, Petitioner reported for a periodic ICE check-in appointment when he was arrested by ICE officials. (Doc. 9 at 6.) Petitioner states that upon his arrest, he was not told of the reasons for his arrest, was not provided with written notice for his OSUP revocation, and never received an informal interview as required under applicable regulations. (*Id*. at 6, 9.) Respondents concede that DHS did not follow applicable regulation 8 C.F.R. § 241.13(i)(3) and failed to notify Petitioner of the reasons for revocation and provide a prompt informal interview. (Doc. 10 at 3.) Nonetheless, Respondents argue that because Petitioner is subject to a final order of removal and because the government has valid travel documents, Petitioner cannot show prejudice in his due process violation as there is now a significant likelihood of removal. (*Id.*)

According to an attorney who assisted Petitioner at the time of his arrest, the arresting immigration officer told her that Petitioner was being detained because ICE had a valid travel document to Laos. (*See* Doc. 8-2 at 1–2.) The attorney then obtained copies of all documents given to Petitioner upon his arrest, which included an I-205 Warrant of Removal/ Deportation and an I-294 Warning to Alien Ordered Removed or Deported. (*Id*. at 2–3, 5–9.) However, the arresting officer refused to provide a copy of the purported travel document. (*Id*. at 2.)

On August 18, 2026, this Court entered a "no transfer" order temporarily prohibiting the government from removing the Petitioner outside the United States or this district pending a decision on the habeas petition. (*See* Doc. 6.) On August 26, 2026, Respondents filed a motion to

dissolve this Court's no transfer order, arguing that because the government has a travel document to execute Petitioner's removal, this Court should lift its order as it is the only impediment to removal. (Doc. 7 at 1.) Respondents attached a copy of the travel document to their motion. (Doc. 7-1 at 1.) The document is a "Laissez-Passer" which is used as a passport and allows an individual to enter Laos for a singly journey. (*Id.*) The document was issued July 2, 2026, and has a validity period of 90 days. (*Id.*) Therefore, it appears that the document remains valid until September 30, 2026. (*See id.*) Interestingly, the document was issued *prior* to Petitioner's re-detention on July 28, 2026. (*Id.*; Doc. 9 at 6.) On August 27, 2026, Petitioner filed a reply, arguing that the temporary travel document does not give the government "carte blanche to ignore the law" and that a due process violation remains. (Doc. 8 at 2–4.)

## IV. DISCUSSION

Under 8 U.S.C. § 1231(a)(6), "[a]n alien ordered removed who is inadmissible under section 1182 of this title, removable under section . . . 1227(a)(2) . . . of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, *if released, shall be subject to . . . terms of supervision*." 8 U.S.C. § 1231(a)(6) (emphasis added); *see also* 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."). Additionally, when a noncitizen subject to a final order of removal is not removed within the ninety-day removal period, and the government decides to release a noncitizen on supervision, the regulations codified at 8 C.F.R. §§ 241.4, 241.13 govern the parameters for re-detention. *See Hernandez-Castro v. Lyons, et al.*, No. 1:25-cv-01574-JLT-SAB, 2025 WL 3771344, at *4–5 (E.D. Cal. Dec. 31, 2025) (citing *Diaz v. Wofford*, No. 1:25-cv-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025)); 8 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

These provisions are at play in this case. Petitioner was ordered removed under 8 U.S.C. § 1227(a)(2)(A)(iii) for being convicted of an aggravated felony. (*See* Doc. 7-2 at 1; Doc. 10-1 at 5.) That order of removal is administratively final, as the BIA and Ninth Circuit have dismissed

Petitioner's appeals. (*See* Doc. 10-1 at 2.) As such, Petitioner was initially subject to detention under 8 U.S.C. § 1231(a)(6) and then released on OSUP after DHS was unable to effectuate his removal to Laos. (*See* Doc. 9 at 6; Doc. 10-1 at 3.) After approximately 29 years of supervised release, Petitioner was re-detained on July 28, 2026. (Doc. 9 at 6.) Ultimately, ICE revoked Petitioner's release on July 28, 2026, because a travel document to Laos had been secured on July 2, 2026, rendering his removal to Laos significantly likely to occur in the reasonably foreseeable future. (*See* Doc. 7-1 at 1; Doc. 8-2 at 2.)

Under applicable regulations, "[t]he Service may revoke an alien's release under this section and return he alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. 241.13(i)(2). In doing so, however, the government must notify the noncitizen of the reasons for revocation of his or her release, conduct an informal prompt interview after his or her return to custody, and afford the noncitizen an opportunity to respond. 8 C.F.R. § 241.13(i)(3). Respondents concede that "DHS did not follow this process." (Doc. 10 at 3.) While the government failed to follow these regulations, DHS nonetheless procured a valid travel document for the Petitioner in early July *prior to* his re-detention on July 28, 2026. (Doc. 7-1 at 1; Doc. 9 at 6.) Therefore, at the time of his arrest, DHS had a legitimate basis to revoke Petitioner's release as his removal to Laos was then significantly likely to occur. *See Nguyen v. Noem*, 797 F. Supp. 3d 651, 657, 672 (N.D. Tex. Aug. 10, 2025) (finding changed circumstances where the government had obtained travel documents and had scheduled petitioner's removal to Vietnam, rendering his removal imminent); *Ajet Aruci v. Wilson, et al.*, No. 1:26-cv-05132-JLT-EGC, 2026 WL 2494913, at *5 (E.D. Cal. Sept. 2, 2026) (denying habeas relief because petitioner's removal was imminent where he had a valid and current Albanian passport and an administratively final order of removal).

In *Nguyen v. Hyde*, the court explained that in assessing whether the government has adequately shown changed circumstances regarding significant likelihood of removal, the Court must review that claim in light of the regulations instructing ICE on how it should make such determination. *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. 2025) (citing *Kong v.*

*United States*, 62 F. 4th 608, 619–20 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(f), (i)(2))). That regulation, codified in 8 C.F.R. § 241.13(f) includes, the "ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, [and] the reasonably foreseeable results of those efforts." The Laissez-Passer document provided by Respondents shows that Laos has identified the Petitioner and has allowed his unencumbered return to that country. (*See* Doc. 7-1 at 1.) It also demonstrates that Respondents have been in communication with the Laos government in efforts to remove the Petitioner well before his re-detention occurred in late July 2026. (*See id.*)

Petitioner's travel document remains valid until September 30, 2026, and serves as a valid passport for Petitioner to enter and return to Laos. (Doc. 7-1 at 1.) Petitioner has an administratively final order of removal. (*See* Doc. 7-2 at 1; Doc. 10-1 at 2.) There is no indication in the record that Petitioner has filed a motion to reopen with the BIA or obtained a stay of removal from the BIA. (*See* Docs. 7, 8, 9, 10.) Thus, Petitioner is imminently removable from the United States. The only thing preventing his removal is this Court's no transfer order.

This alters the legal landscape because even if Petitioner's initial re-detention was *ultra vires*, the government can nonetheless detain Petitioner to initiate his imminent removal. *See Ibarra-Lopez v. Lyons, et al.*, No. 1:26-cv-01799-JLT-EPG, 2026 WL 2428026, at *2 (E.D. Cal. Aug. 19, 2026) (denying the habeas petition even though the government failed to comply with 8 C.F.R. § 241.13(i) in revoking petitioner's release because the petitioner was now imminently removable from the United States). As one district court has indicated, detention pursuant to imminent removal "might reasonably be thought of as implicit in the concept of 'removal' itself." *Diallo v. Joyce*, 817 F. Supp. 3d 202, 208 (S.D.N.Y. 2025). Because the Court lacks jurisdiction to interfere with the implementation of a final, fully executable order of removal, 8 U.S.C. § 1252(g) ("no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to . . . execute removal orders against any alien under this chapter"), the Court concludes it cannot offer habeas relief and that the Petition must be **DENIED**.

///

Accordingly, the Court **ORDERS**:

1. The first amended petition for writ of habeas corpus (Doc. 9) is **DENIED**.
2. Respondents' motion to dissolve the Court's no-transfer order (Doc. 7) is **GRANTED**.
3. The Court's no-transfer order (Doc. 6) prohibiting the government from removing the Petitioner out of the United States is **RESCINDED**.
4. The Clerk of Court is directed to **CLOSE THE CASE**.

IT IS SO ORDERED.

Dated: _September 22, 2026_

Jennifer L. Thurston
UNITED STATES DISTRICT JUDGE